**IN THE UNITED STATE DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF MISSOURI**

TRIAD MEDIA, INC.,         )
171 English Landing Drive    )
Suite 215                  )
Parkville, Missouri 64152,    )
                             )     Civil No._____
        Plaintiff,      )
                             )
vs.                        )
                             )
JULIAN STONE,          )     Date Filed_____
4218 N. 129th Street       )
Kansas City, Kansas 66109,   )
                             )     **DEMAND FOR JURY TRIAL**
JOE SPECTOR,           )
6520 W. 106th Street       )
Overland Park, Kansas 66212, )
                             )
ALVIN SAMPLE,         )
12109 Brickyard Road      )
Kansas City, Missouri 64138,  )
                             )
GABRIELLE TINDLE,     )
3300 N.W. Mill Drive      )
Blue Springs, Missouri 64015, )
                             )
JASON WHITE,           )
Domain Name Holdings, LLC, )
3790 Florida Street        )
Suite AG06                )
San Diego, California 92104,   )
                             )
And                     )
                             )
GODADDY.COM, INC.,     )
Compliance Department     )
14455 N. Hayden Road     )
Suite 219                 )
Scottsdale, Arizona 85260    )
                             )
        Defendants.     )

Case 4:10-cv-00165-SOW   Document 1   Filed 02/20/10   Page 1 of 39

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES FOR VIOLATIONS OF 18 U.S.C.S. § 2511 PURSUANT TO 18 U.S.C.S. § 2520 AND FOR COMMON LAW CAUSES OF ACTION IN CIVIL CONSPIRACY, CONVERSION, BREACH OF THE DUTY OF LOYALTY, UNFAIR COMPETITION, TORTIOUS INTERFERENCE, UNJUST ENRICHMENT, CONSTRUCTIVE TRUST, EQUITABLE ACCOUNTING, TRADE SECRET MISAPPROPRIATION, AND DEFAMATION.**

1.     Plaintiff, Triad Media, Inc. (hereinafter "Triad"), sues Julian Stone ("Stone"), Joe Spector ("Spector"), Alvin Sample ("Sample"), Gabrielle Tindle ("Tindle"), Jason White/Domain Name Holdings, LLC ("White"), and GoDaddy.com, (collectively, "Defendants"), stating and alleging as follows:

**I.**
**JURISDICTION**

2.     This lawsuit is brought pursuant to Defendant's alleged violations of the Wire and Electronic Communications Interception and Interception of Oral Communications crimes code, 18 U.S.C.S. § 2511, pursuant to 18 U.S.C.S. § 2520, which authorizes civil suit on criminal violations.

3.     This is an action for declaratory and injunctive relief and compensatory and punitive damages for the unlawful interception, use, and distribution or electronic proprietary information in violation of this federal statute.

4.     This Court has jurisdiction over this subject matter pursuant to 28 U.S.C. § 1331, which states that United States District Courts have original jurisdiction over all civil matters arising under the Constitution, laws, and treaties of the United States.

5.     This Court has personal jurisdiction over the parties in this action.  Defendants in this action had or have agents who have independently transacted business in the State of Missouri and certain activities of Defendants giving rise to this

action took place in the State of Missouri; more particularly, Defendants' acts of violating federal laws and the proprietary interests of Plaintiff took place in the State of Missouri.  Moreover, upon information and belief, Defendants gained unauthorized access to Plaintiff's computer systems in Missouri and Illinois, thereby conferring upon this Court personal jurisdiction over Defendants.

## II.
## VENUE

6.  Venue is proper under this judicial district under 28 U.S.C. 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred within Platte County, which is within the Western District of Missouri.

## III.
## PARTIES

7.  Plaintiff Triad is at all times relevant hereto a corporation incorporated under the laws of the State of Florida.  Triad is a multi-faceted third party internet services provider that assists in the production, marketing, sales, programming, and maintenance of web-based services and products throughout the United States.  Through its operations, Triad provides interstate internet services to numerous clients who pay Triad to program, create, and maintain their domains; Triad also assists other customers with the production, marketing, and sales of internet products and services.  Triad holds proprietary rights to their client database, system programs and electronic databases.

8.   Defendant Julian Stone was hired by Triad as a web designer and programmer, who was subsequently terminated by Triad in November 2009. Upon information and belief, defendant Stone resides at 4218 N. 129th Street Kansas City, Kansas 66109, is a citizen of the United States, and a citizen and resident of the State of Kansas.

9.   Defendant Joe Spector was working as an independent contractor for Triad's sales department, providing business to business sales services for Triad. Upon information and belief, defendant Spector resides at 6520 W. 106th Street Overland Park, Kansas 66212, is a citizen of the United States, and a citizen and resident of the State of Kansas.

10.  Upon information and belief, defendant Alvin Sample was previously employed by Triad, and subsequently recruited by defendant Spector to perform sales-related tasks, and resides at 12109 Brickyard Road, Kansas City, Missouri 64138, is a United States citizen, and a citizen and resident of the State of Missouri.

11.  Defendant Gabrielle Tindle was a programmer for Triad, and upon information and belief, was recruited by Spector to perform programming-related tasks, and resides at 3300 NW Mill Drive, Blue Springs, Missouri 64015. Defendant Tindle's citizenship is unknown to plaintiff.

12.  Defendant Jason White is the owner and operator of Domain Name Holdings, LLC, an internet company with its principal place of business in San Diego, California; Defendant White's citizenship is unknown to plaintiff.

4

13.     Defendant GoDaddy.com is a web-based corporation that conducts interstate business and has its principal offices in Scottsdale, Arizona.

**IV.**
**FACTS**

14.     By way of further allegation, Triad alleges that Stone executed a Confidentiality and Trade Secret Agreement ("Agreement") with Triad as a condition of Stone's employment with Triad.  The Agreement was signed by Stone, who agreed to the terms and provisions stated therein.

15.     Stone was later terminated by Triad in November 2009.

16.     Upon information and belief, prior to his departure from Triad's offices, Stone, on behalf of himself and on behalf of Spector, copied Triad's entire client management services platform system, including databases and programs, onto an external hard drive; contrary to the Agreement between Stone and Triad, Stone took this external hard drive with him when he was terminated.

17.     Upon information and belief, Stone, on behalf of himself and on behalf of Spector, created his own business subsequent to his termination from Triad, using proprietary information belonging to Triad stored on the external hard drive.

18.     The information copied and taken by Stone included clients' **bank account numbers**.

19.     The information copied and taken by Stone included clients' **credit card numbers.**

5

20.     The information copied and taken by Stone included clients' **social security numbers.**

21.     The information copied and taken by Stone included clients' **contact information**, including names, email addresses, telephone numbers, and addresses.

22.     Upon information and belief, Stone, on behalf of himself and on behalf of Spector, used Triad's confidential proprietary information to contact Triad's clients, engaging in a practice of explaining to clients how to dispute charges placed on their accounts by Triad or third parties working with Triad ("third parties"), for services Triad and third parties provided to clients.

23.     Once charges were disputed, Stone, on behalf of himself and on behalf of Spector, allegedly offered to complete the projects started by Triad for the clients.

24.     This scheme resulted and continues to result in an average loss of business for Triad at a rate of approximately $35,000 to $75,000 per month.

25.     Merchant account transactions also indicate that unauthorized charges have been made to some of Triad's client's accounts.

26.     Upon information and belief, Stone, on behalf of himself and on behalf of Spector, obtained unauthorized remote access to Triad's administrative systems, which allowed Stone to monitor Triad's programs, emails, and databases in real time; particularly, Triad's emails were intercepted, and Stone posed as Triad, sending deceiving emails to Triad's clients under triadmediallc@gmail.com.

27.     This unauthorized interception of Triad's computer systems and networks is ongoing, resulting in erased log files and deceptive email messages via Triad's network servers located in Chicago, Illinois, and Kansas City, Missouri.

28.     Additionally, some of Triad's client's domains are hosted through defendant GoDaddy.com.

29.     Upon information and belief, Stone, on behalf of himself and on behalf of Spector, obtained unauthorized access to Triad's clients' GoDaddy.com accounts and changed the domain settings so that Triad's clients could not manipulate their domain settings, eventually taking down numerous client domains.

30.     Triad's employees spent hundreds of hours and continue to expend numerous hours, restoring, recreating, and reprogramming these sites.

31.     Triad sought assistance from GoDaddy.com in their effort to restore these accounts and GoDaddy.com refused to cooperate with Triad.

32.     Defendant Spector was an independent contractor with Triad performing business to business sales.

33.     Spector's contract with Triad was terminated by Triad after Spector was caught providing fraudulent and inaccurate sales numbers to Triad.

34.     Spector entered into a partnership with Stone.

35.     Spector, on behalf of himself and on behalf of Stone, copied and took with him Triad's entire client contact list.

7

36.     The client contact list Spector copied and took from Triad took included **names, email addresses, phone numbers, and addresses** of Triad's clients and contact.

37.     Spector began assisting Stone by making sales calls to Triad's clients from the proprietary information Stone took from Triad evidenced in emails from Spector regarding sales calls made to Triad's clients.

38.     Upon information and belief, Stone and Spector recruited defendant Sample to assist with making sales calls to Triad's clients from proprietary confidential client information copied and taken from Triad by both Stone and Spector.

39.     Defendant Tindle was hired as a programmer by Triad, with job duties consisting of organizing, programming, and creating Triad's proprietary client database and program.

40.     Defendant Tindle was subsequently terminated from Triad, and upon information and belief, was recruited by Stone and Spector for her programming abilities and knowledge of Triad's systems, programs, and operations.

41.     In addition to these operations, upon information and belief, Stone and Spector engaged in a smear campaign against Triad by posting false internet warnings disparaging Triad's business practices, informing readers how to dispute their charges and contracts with Triad and third parties, and damaging Triad's business reputation.

42.     Triad has had to hire computer technicians and spend hundreds of hours rebuilding domains, fixing databases, repairing programs, and investigating disputed charges from their merchant account.

43.     Stone has further violently threatened, verbally and in writing, Triad's employees; Triad further fears that if immediate action is not taken, further irreparable injury to Triad will occur, whether from lost profits, use of stolen confidential information, stolen domains, misappropriation and tampering of Triad's networks and computer systems, or physical harm to its employees.

44.     On or about February 18, 2010, upon information and belief, the ownership of at least of two of Triad's domains, www.etaxnet.com and www.vianettraining.com, was unlawfully transferred and sold to defendant White/Domain Name Holdings, LLC, by defendant Stone on behalf of himself and on behalf of Spector.

45.     On or about February 19, 2010, over ninety (90) domains belonging to Triad were shut down without Triad's knowledge or authorization and transferred to defendant White.

46.     Of the at least ninety (90) domains shut down and transferred on or about February 19, 2010, one of the domains was the platform for Triad's corporate server and another of these domains housed Triad's regular purchase traffic server.

47.     Due to Triad's corporate server being shut down and transferred, over 4,000 of Triad's clients' domains were affected, rendering thousands of domains

9

"dark" and cutting off all email transmissions and internet traffic to and from these domains.

48.     These thousands of domains included tax-preparation websites containing **social security and bank account numbers**, among other confidential information.

49.     These thousands of domains included charitable websites, one of which accepted donations for the benefit of an orphanage in Haiti; as a result, donors' **credit card information** may be subject to interception.

50.     The above and foregoing acts were done in willful and conscious disregard for the rights of others.

**COUNT I:**
**Triad v. Defendants Stone, Sample, and Tindle**
**VIOLATION OF FEDERAL WIRETAPPING STATUTE 18 U.S.C.S. § 2511**
**AUTHORIZING CIVIL DAMAGES UNDER 18 U.S.C.S. § 2520**

51.     Triad reincorporates and re-alleges paragraphs 1-50 of this Complaint as though fully set forth herein.

52.     18 U.S.C.S. § 2511 states that anyone intentionally intercepting or using electronic communication shall be in violation of the federal wiretapping statute.

53.     18 U.S.C.S. §2510(12) defines "electronic communication" as including "any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce…".

10

54.    18 U.S.C.S. §2510(4) defines "interception" generally as acquiring electronic communication through an electronic device.

55.    The actions of the defendants, more particularly alleged below, was willful and malicious and showed complete indifference to and conscious disregard for Triad.

56.    The actions of the defendants, more particularly alleged below, has caused Triad to incur reasonable attorneys fees and costs.

57.    Defendants Stone, Sample, and Tindle are "computer tresspassers" as defined by 18 U.S.C.S. §2510(21) under 18 U.S.C.S. §2511 by virtue of the following acts conducted against Triad:

    a.  Unauthorized copying and taking of Triad's database by defendant Stone on behalf of himself and on behalf of Spector;

    b.  Theft of Triad's external hard drive by Stone on behalf of himself and on behalf of Spector;

    c.  Unauthorized access to Triad's database after termination from Triad by both Stone and Tindle on behalf of themselves and on behalf of Spector;

    d.  Unauthorized access to Triad's computer servers after termination from Triad by Stone, Sample, and Tindle on behalf of themselves and on behalf of Spector;

    e.  Unauthorized removal and transfer of Triad's client's domains via GoDaddy.com by Stone on behalf of himself and on behalf of Spector;

    f.  Unauthorized shut-off of Triad's client's domains via GoDaddy.com by Stone on behalf of himself and on behalf of Spector; and

g.  Unauthorized use and manipulation of the confidential proprietary information in Triad's databases, systems, and programs by Stone, Sample, and Tindle on behalf of themselves and on behalf of Spector.

58.  By virtue of 18 U.S.S.C. §2520, Triad is seeking civil damages for the above-mentioned violations to 18 U.S.S.C. §2511, namely:

a.  Compensatory damages for hundreds of staff hours spent securing Triad's servers from unauthorized access;

b.  Compensatory damages for the unlawful copying and taking of Triad's proprietary and confidential databases by Stone on behalf of himself and on behalf of Spector;

c.  Interception of emails;

d.  Interception of web-based traffic;

e.  Compensatory damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle on behalf of themselves and on behalf of Spector;

f.  Compensatory damages for hundreds of staff hours spent restoring and recreating damaged, removed, and shut-down domains;

g.  Compensatory damages due to hiring a computer firm to secure domains;

h.  Immediate and permanent injunctive relief to preclude further imminent and irreparable harm, loss of data, loss of business, and loss of confidential client and proprietary information;

i.   Punitive damages in an amount sufficient to punish defendants for willful and malicious conduct, and to deter defendants and others similar situated from such conduct in the future;

j.   For reasonable attorneys fees and costs; and

k.   For such other relief as this Court deems just, equitable, and proper.

**COUNT II:**
**Triad v. Stone, Spector, Sample, and Tindle**
**CIVIL CONSPIRACY**

59.   Triad reincorporates and re-alleges paragraphs 1-58 of this Complaint as though fully set forth herein.

60.   Triad's civil conspiracy claim against defendants Stone, Spector, Sample, and Tindle are proper under supplemental pendant jurisdiction because the civil conspiracy claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

61.   Missouri law governs the determination of defendant's acts.

62.   Defendants Stone, Spector, Sample, and Tindle, knowingly agreed to commit an unlawful act, namely, intercepting and using Triad's electronic communications and proprietary, confidential information for a profit.

63.   Defendant's unlawful acts in furtherance of such civil conspiracy include but are not limited to:

a.   Breach of confidentiality agreements;

b.   Contact of Triad's clients;

c.  Tortious interference of Triad's business relationships;

d.  Conversion of Triad's business contacts and proprietary information;

e.  Breaches of loyalty stemming from breach of confidentiality agreements;

f.  Unfair competition stemming from breach of confidentiality agreements;

g.  Unjust enrichment;

h.  Misappropriation of trade secrets; and

i.  Defamation.

64.  These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad.

65.  Defendants Stone, Spector, Sample, and Tindle were unified in their purpose to intercept and utilize Triad's confidential and proprietary electronic information to generate business and profits by soliciting Triad's clients to cease business with Triad, dispute payments made to Triad, and hire Stone and associates to complete the projects Triad had begun, resulting in a common scheme among conspirators.

66.  Defendants, by intercepting and using Triad's proprietary confidential electronic information, and by soliciting Triad's client via use of this information, completed more than one step in furtherance of their common objective.

67.  Defendants' conspiratorial acts have directly and proximately caused the following damages to Triad:

a.  Damages for hundreds of staff hours spent securing Triad's servers from unauthorized access;

14

b. Damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle;

c. Damages for hundreds of staff hours spent restoring and recreating damaged, removed, shut-down, stolen, and transfered domains;

d. Damages due to hiring a computer firm to secure domains;

e. Damage by virtue of lost profits through funds extracted from Triad's merchant accounts due to refunding disputed charges;

f. Actual, consequential, and special damages in such amounts as is adequate to compensate Triad for their losses; and

g. Such other relief as the Court deems just, equitable and proper.

68.    By virtue of civil conspiracy, each defendant is jointly and severally liable for each act committed by the other defendants through their mutual consent and involvement in the civil conspiracy.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A. All of plaintiff's actual, consequential, and special damages caused by defendants;

B. Punitive damages in an amount sufficient to punish defendants for willful and malicious conduct, and to deter defendants and others similar situated from such conduct in the future; and

C. For such other relief as this Court deems just, equitable, and proper.

**COUNT III:**
**Triad v. Stone, Spector, Sample, Tindle, and White**
**<u>CONVERSION</u>**

15

69. Triad reincorporates and re-alleges paragraphs 1-68 of this Complaint as though fully set forth herein.

70. Triad's conversion claim against defendants Stone, Spector, Sample, Tindle, and White are proper under supplemental pendant jurisdiction because the conversion claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

71. Missouri law governs the determination of defendant's acts.

72. During the course of the aforementioned events, through the present, Triad owns the title and rights to all of its electronic, confidential, and proprietary information (namely Triad's database and contents thereof).

73. Triad has, and still maintains an immediate right to this confidential proprietary information; Triad hired employees under Trade Secret and Confidentiality Agreements to program, design, create, and otherwise maintain its databases, systems, networks, programs, and other electronically stored information and communications.

74. Triad had the right to exclusive possession of the aforementioned database.

75. Defendants took possession and/or made copies of Triad's database with the intent to exercise some control or to deprive Triad of control of Triad's database, thereby depriving Triad of it's exclusive right to this database.

76. By virtue of their acts in violation of 18 U.S.C.S. §2511, and through their conspiratorial designs, defendants Stone, Spector, Sample, and Tindle,

without authorization, permission, or agreement with Triad, intercepted and used Triad's confidential proprietary information for personal gain.

77. To wit, upon information and belief, two domains (containing over ninety (90) websites, including the email and web based traffic to those websites, amounting to thousands of hits) were sold to defendant White by defendant Stone as recently as February 2010; defendant White currently owns and is profiting off of these two domains.

78. Defendants converted to their own profitable use Triad's confidential proprietary information, resulting in damages to Triad in the form of lost profits and lost business.

79. These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad.

80. Defendants' conversion of Triad's database and proprietary information has directly and proximately caused the following damages to Triad:

    a. Damages for hundreds of staff hours spent securing Triad's servers from unauthorized access;

    b. Damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle;

    c. Damages for hundreds of staff hours spent restoring and recreating damaged, removed, shut-down, stolen, and transfered domains;

    d. Damages due to hiring a computer firm to secure domains;

    e. Damage by virtue of lost profits through funds extracted from Triad's merchant accounts due to refunding disputed charges;

f. Actual, consequential, and special damages in such amounts as is adequate to compensate Triad for their losses; and

g. Such other relief as the Court deems just, equitable and proper.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A. All of plaintiff's actual, consequential, and special damages caused by defendants;

B. Punitive damages in an amount sufficient to punish defendants for willful and malicious conduct, and to deter defendants and others similar situated from such conduct in the future; and

C. For such other relief as this Court deems just, equitable, and proper.

## COUNT IV:
### Triad v. Stone, Sample, and Tindle
### BREACH OF THE DUTY OF LOYALTY

81.    Triad reincorporates and re-alleges paragraphs 1-80 of this Complaint as though fully set forth herein.

82.    Triad's breach of the duty of loyalty claim against defendants Stone, Sample, and Tindle are proper under supplemental pendant jurisdiction because the breach of loyalty claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

83.    Missouri law governs the determination of defendant's acts.

84. Defendants owed a duty of loyalty to triad arising via virtue of their employment with Triad for both acts committed during and after their employment with Triad, including but not limited to:

    a. Unauthorized copying databases;

    b. Retaining databases without authorization;

    c. Unauthorized and unlawful interception of such databases;

    d. Use of such databases in ways adverse to Triad's interests; and

    e. Other acts complained of in this Complaint.

85. These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad.

86. Stone, as a condition of his employment with Triad, voluntarily signed Triad's "Trade Secret and Confidentiality Agreement" ("Agreement") stating that Stone was prohibited from acting in a manner contrary to the interests of his employer, Triad, thereby conferring upon Stone a duty of loyalty.

87. Upon information and belief, prior to Stone's termination, Stone acted on behalf of himself and on behalf of Spector, in breach of his duty of loyalty when he copied Triad's entire system onto an external hard drive, and further, did not surrender the copied systems or the hard drive when terminated from employment, as he promised to do in the Agreement.

88. Upon information and belief, Tindle and Sample were subject to a similar Agreement during their employment with Triad and thereby owed Triad a duty of loyalty while employed with Triad.

89.    Upon information and belief, Tindle supplied Stone with confidential information after Stone's termination but before Tindle's termination with Triad, thereby breaching her duty of loyalty with Triad during her employment.

90.    Upon information and belief, defendant Sample retained proprietary client information from his work with Triad and is using that information in his work with defendant Stone.

91.    Defendants' breaches of loyalty have directly and proximately caused the following damages to Triad:

    a.   Damages for hundreds of staff hours spent securing Triad's servers from unauthorized access;

    b.   Damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle;

    c.   Damages for hundreds of staff hours spent restoring and recreating damaged, removed, shut-down, stolen, and transfered domains;

    d.   Damages due to hiring a computer firm to secure domains;

    e.   Damage by virtue of lost profits through funds extracted from Triad's merchant accounts due to refunding disputed charges;

    f.   Actual, consequential, and special damages in such amounts as is adequate to compensate Triad for their losses; and

    g.   Such other relief as the Court deems just, equitable and proper.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A. All of plaintiff's actual, consequential, and special damages caused by defendants;

B. Punitive damages in an amount sufficient to punish defendants for willful and malicious conduct, and to deter defendants and others similar situated from such conduct in the future; and

C. For such other relief as this Court deems just, equitable, and proper.

**COUNT V:**
**Triad v. Stone, Sample, and Tindle**
**UNFAIR COMPETITION**

92.     Triad reincorporates and re-alleges paragraphs 1-91 of this Complaint as though fully set forth herein.

93.     Triad's unfair competition claim against defendants Stone, Sample, and Tindle are proper under supplemental pendant jurisdiction because the unfair competition claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

94.     Missouri law governs the determination of defendant's acts.

95.     Defendants' had a duty to refrain from unfairly competing with Triad, which included the duties not to:

a.   Copy Triad's databases;

b.   Retain Triad's databases;

c.   Utilize Triad's databases; and

d.   Intercept Triad's databases.

96.   All of the aforementioned acts alleged in this Complaint constitute breaches of the defendants' duty not to unfairly compete with Triad.

97.   Additionally, in direct contravention of their respective Trade Secret and Confidentiality Agreements, Stone, acting on behalf of himself and on behalf of Spector, intentionally availed himself to Triad's proprietary confidential information with the assistance of Tindle; Sample acquired and unlawfully retained proprietary information by virtue of his contract with Triad.

98.   Stone, Sample, and Tindle's use of Triad's proprietary and confidential information for their own business gain through direct solicitation of Triad's clients is in direct contravention of their respective Agreements with Triad and amounts to unfair competition.

99.   These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad.

100.  Defendants' acts of unfair competition have directly and proximately caused the following damages to Triad:

   a.   Damages for hundreds of staff hours spent securing Triad's servers from unauthorized access;

   b.   Damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle;

   c.   Damages for hundreds of staff hours spent restoring and recreating damaged, removed, shut-down, stolen, and transfered domains;

   d.   Damages due to hiring a computer firm to secure domains;

e. Damage by virtue of lost profits through funds extracted from Triad's merchant accounts due to refunding disputed charges;

f. Actual, consequential, and special damages in such amounts as is adequate to compensate Triad for their losses; and

g. Such other relief as the Court deems just, equitable and proper.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A. All of plaintiff's actual, consequential, and special damages caused by defendants;

B. Punitive damages in an amount sufficient to punish defendants for willful and malicious conduct, and to deter defendants and others similar situated from such conduct in the future; and

C. For such other relief as this Court deems just, equitable, and proper.

**COUNT VI:**
**Triad v. Stone, Sample, and Tindle**
**TORTIOUS INTEREFERENCE OF BUSINESS RELATIONSHIPS**

101. Triad reincorporates and re-alleges paragraphs 1-100 of this Complaint as though fully set forth herein.

102. Triad's tortuous interference claim against defendants Stone, Sample, and Tindle are proper under supplemental pendant jurisdiction because the tortuous interference claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

23

103. Missouri law governs the determination of defendant's acts.

104. As previously outlined in Counts IV and V, defendants Stone, Sample, and Tindle were subject to an Agreement where a valid business expectation was created by Triad and understood by Stone, Sample, and Tindle.

105. Triad had an ongoing business relationship with its clients, and a reasonable expectation of maintaining these business relationships with its clients, including but not limited to, providing web services, programming and hosting domains and websites, providing tax services, selling internet products and services, providing marketing services, and any other aspects of Triad's businesses.

106. Stone, Sample, and Tindle had actual knowledge of Triad's business expectations, namely, Triad's expectations of secrecy and confidentiality with respect to the treatment of Triad's proprietary information.

107. These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad through their acts of:

    a.  Unauthorized copying and taking of Triad's database by defendant Stone;

    b.  Theft of Triad's external hard drive by Stone;

    c.  Unauthorized access to Triad's database after termination from Triad by both Stone and Tindle;

    d.  Unauthorized access to Triad's computer servers after termination from Triad by both Stone, Sample, and Tindle;

24

e. Unauthorized removal and transfer of Triad's client's domains via GoDaddy.com by Stone;

f. Unauthorized shut-off of Triad's client's domains via GoDaddy.com by Stone;

g. Unauthorized use and manipulation of the confidential proprietary information in Triad's databases, systems, and programs by Stone, Sample, and Tindle; and

h. Contacting and soliciting Triad's clients, thereby intentionally causing breach of contracts between Triad and its clients; and interfering in Triad's business relationships with its clientele.

108. Defendants Stone, Sample, and Tindle lacked justification for their willful and intentional breach of this Agreement.

109. Defendants' tortuously interfering acts have directly and proximately caused the following damages to Triad:

a. Damages for hundreds of staff hours spent securing Triad's servers from unauthorized access;

b. Damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle;

c. Damages for hundreds of staff hours spent restoring and recreating damaged, removed, shut-down, stolen, and transfered domains;

d. Damages due to hiring a computer firm to secure domains;

e. Damage by virtue of lost profits through funds extracted from Triad's merchant accounts due to refunding disputed charges;

25

    f.   Actual, consequential, and special damages in such amounts as is adequate to compensate Triad for their losses; and

    g.   Such other relief as the Court deems just, equitable and proper.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

    A.   All of plaintiff's actual, consequential, and special damages caused by defendants;

    B.   Punitive damages in an amount sufficient to punish defendants for willful and malicious conduct, and to deter defendants and others similar situated from such conduct in the future; and

    C.   For such other relief as this Court deems just, equitable, and proper.

**COUNT VII:**
**Triad v. All Defendants**
**<u>UNJUST ENRICHMENT</u>**

110.    Triad reincorporates and re-alleges paragraphs 1-109 of this Complaint as though fully set forth herein.

111.    Triad's unjust enrichment claim against all defendants is proper under supplemental pendant jurisdiction because the unjust enrichment claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

112.    Missouri law governs the determination of defendant's acts.

Case 4:10-cv-00165-SOW   Document 1   Filed 02/20/10   Page 26 of 39

113. By virtue of the acts more particularly described in Counts I-VII, defendants Stone, Spector, Sample, and Tindle were conferred a benefit through the uncompensated use of Triad's proprietary information.

114. Defendants have benefitted by:

   a. diverting web and email traffic from Triad's customers;

   b. generating sales leads from Triad's database;

   c. using Triad's methods of operation;

   d. making profits from Triad's database; and

   e. other acts enumerated more specifically in this Complaint.

115. These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad.

116. Defendant White currently obtained ownership of at least two of Triad's domains, and is currently receiving the unauthorized benefits of those domains without compensating Triad for the same.

117. GoDaddy.com received the benefit of Triad's work in restoring all of its client's domains hosted through GoDaddy.com when GoDaddy.com refused to cooperate or assist Triad with restoration of its client's domains after said domains were unlawfully tranferred, removed, or shut down due to defendant Stone's illegal conduct.

118. Upon information and belief, upon the basis of these and other allegations more particularly enumerated in this Complaint, Triad's legal remedies are inadequate.

119. As a result, GoDaddy.com was unjustly enriched when Triad had to hire independent contractors and computer technicians, along with expending hundreds of employee hours to reconstruct and repair the damaged domains.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A. The reasonable value of the benefits conferred or retained by defendants;

B. Disgorgement of profits and accounts; and

C. For such other relief as this Court deems just, equitable, and proper.

**COUNT VIII:**
**Triad v. Stone, Spector, Sample, Tindle, and White**
**CONSTUCTIVE TRUST**

120. Triad reincorporates and re-alleges paragraphs 1-120 of this Complaint as though fully set forth herein.

121. Triad's constructive trust claim against all defendants are proper under supplemental pendant jurisdiction because the constructive trust claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

122. Missouri law governs the determination of defendant's acts.

123. By virtue of the Trade Secret and Confidentiality Agreements between defendants and Triad respectively, defendants voluntarily entered into a confidential relationship with Triad.

124. Defendants, when breaching their Confidentiality Agreements, further breached their confidential relationships with Triad.

125. As a result of defendant Stone, Spector, Sample, Tindle, and White's actions more particularly enumerated in this Complaint, imposition of a constructive trust upon each defendant to prevent further unjust enrichment and conversion of property is necessary.

126. Upon information and belief, upon the basis of these and other allegations more particularly enumerated in this Complaint, Triad's legal remedies are inadequate.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A. The imposition of a constructive trust upon or to trace the reasonable value of the benefits conferred or retained by defendants;

B. The imposition of a constructive trust upon defendants or to trace the money and property coming into the possession of defendants as a result of the acts more particularly enumerated in this Complaint; and

C. For such other relief as this Court deems just, equitable, and proper.

**COUNT IX:**
**Triad v. Stone, Sample, and Tindle**
**EQUITABLE ACCOUNTING**

127. Triad reincorporates and re-alleges paragraphs 1-126 of this Complaint as though fully set forth herein.

128. Triad's equitable accounting claim against defendants Stone, Sample, Tindle, and White are proper under supplemental pendant jurisdiction because the

equitable accounting claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

129. Missouri law governs the determination of defendant's acts.

130. As established in previous Counts of this Complaint, Stone, Sample, and Tindle, by virtue of their Agreements with Triad during the duration of their respective employments, each owed a duty of loyalty and confidentiality to Triad, which is characterized as a confidential or trust relationship.

131. Defendants had a fiduciary duty to maintain the confidentiality and to protect the proprietary and trade secrets of Triad.

132. The accounts in this case are complex; merchant holding accounts owned by Triad have been affected by defendants' actions; each defendant is believed to possess at least one bank account; upon information and belief, client bank accounts have received unauthorized charges; and the overall nature of this case indicates that many monetary transfers are done electronically.

133. The need for discovery regarding these accounts is of paramount importance in order to trace the flow of money, as well as lost and gained profits between Triad, the defendants, and Triad's clients. Due to the highly complex nature of the banking systems involved, and the volatile and confidential nature of this information as it is communicated electronically, expedited discovery is necessary to preserve evidence and maintain confidentiality of information.

134. Other legal remedies are inadequate in conferring the benefits such an accounting would provide, because due to the electronic communication and transfers forming the foundation of this case, information can be easily lost, transferred, manipulated, or stolen unless immediate equitable action is taken.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A. Requiring defendants account to Triad for the:

    a. Location of the database;

    b. Copies of the database;

    c. Use of the database;

    d. Use of any and all client identity and financial information;

    e. Income derived from use of database; and

    f. Profits derived from use of the database.

B. For such other relief as this Court deems just, equitable, and proper.

## COUNT X:
### Triad v. Stone and Spector
### DEFAMATION

135. Triad reincorporates and re-alleges paragraphs 1-134 of this Complaint as though fully set forth herein.

136. Triad's defamation claim against defendants Stone and Spector are proper under supplemental pendant jurisdiction because the defamation claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal

31

statute 18 U.S.C.S. §2511 in Count I, above. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

137.    Missouri law governs the determination of defendant's acts.

138.    Upon information and belief, Stone and Spector published false statements about Triad on the internet with regard to Triad's business practices and instructing readers on how to dispute business transactions between clients and Triad.

139.    These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad.

140.    Such defamatory statements by Defendants' have directly and proximately caused the following damages to Triad:

    a.    Damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle;

    b.    Damages for hundreds of staff hours spent restoring and recreating damaged, removed, shut-down, stolen, and transfered domains;

    c.    Damages due to hiring a computer firm to secure domains;

    d.    Damage by virtue of lost profits through funds extracted from Triad's merchant accounts due to refunding disputed charges;

    e.    Actual, consequential, and special damages in such amounts as is adequate to compensate Triad for their losses; and

    f.    Such other relief as the Court deems just, equitable and proper.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A.  All of plaintiff's actual, consequential, and special damages caused by defendants;

B.  Punitive damages in an amount sufficient to punish defendants for willful and malicious conduct, and to deter defendants and others similar situated from such conduct in the future; and

C.  For such other relief as this Court deems just, equitable, and proper.

### COUNT XI
### Triad v. Stone, Sample, and Tindle
### MISAPPROPRIATION OF TRADE SECRET UNDER RSMo. § 417.455

141.  Triad reincorporates and re-alleges paragraphs 1-140 of this Complaint as though fully set forth herein.

142.  Triad's misappropriation of trade secret claim against defendants Stone, Sample, and Tindle are proper under supplemental pendant jurisdiction because the the misappropriation claim is substantially related and arises from a common nucleus of operative facts stemming from the same controversy that resulted in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

143.  Missouri law governs the determination of defendant's acts.

144.  It is a violation of Missouri law to misappropriate a trade secret under RSMo. § 417.455, and civil damages, including injunctive relief and punitive damages may be sought under RSMo. § 417.457.

145.  By violating the above-mentioned Agreements between Stone and Triad, Sample and Triad, and Tindle and Triad, respectively, referenced more particularly in the forgoing Counts of this Complaint, Stone and Tindle have

33

misappropriated Triad's trade secrets through intentionally breach of the Agreement; taking of proprietary information; taking of hardware storing proprietary information; intercepting and using proprietary and confidential information; and using such trade secrets as their own for profitable gain to the detriment of Triad.

146. These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad.

147. Defendants' acts of misappropriation have directly and proximately caused the following damages to Triad:

    a.   Damages for hundreds of staff hours spent securing Triad's servers from unauthorized access;

    b.   Damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle;

    c.   Damages for hundreds of staff hours spent restoring and recreating damaged, removed, shut-down, stolen, and transfered domains;

    d.   Damages due to hiring a computer firm to secure domains;

    e.   Damage by virtue of lost profits through funds extracted from Triad's merchant accounts due to refunding disputed charges;

    f.   Actual, consequential, and special damages in such amounts as is adequate to compensate Triad for their losses; and

    g.   Such other relief as the Court deems just, equitable and proper.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

A.  All of plaintiff's actual, consequential, and special damages caused by defendants;

B.  Punitive damages in an amount sufficient to punish defendants for willful and malicious conduct, and to deter defendants and others similar situated from such conduct in the future; and

C.  For such other relief as this Court deems just, equitable, and proper.

## COUNT XI:
### Triad v. All Defendants
### <u>PERMANENT INJUNCTION</u>

148.  Triad reincorporates and re-alleges paragraphs 1-147 of this Complaint as though fully set forth herein.

149.  By virtue of the acts more particularly described in the other Counts of this Complaint, Triad has suffered and continues to suffer immediate and irreparable harm and injury.

150.  Due to the nature of electronically intercepted, used, and disseminated information in this case, legal remedies are inadequate to compensate plaintiff or restore plaintiff to the position it occupied prior to defendants' unlawful acts.

151.  Issuing a permanent injunction is in the best interest of the Plaintiff, its customers and the public, as confidential information, including but not limited to client identities, social security numbers, credit card and bank account information has been intercepted, stolen, used, and disseminated by defendants, and to protect from threats of and use of violence against Plaintiff, its officers, agents and employees.

35

152.   In balancing the equities of all interested parties, issuing a permanent

injunction would not unduly burden the defendants, for defendants are

benefitting solely from electronic information that was unlawfully and without

authorization, intercepted, stolen, used and disseminated from Triad's

confidential and proprietary databases.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against

defendants, jointly and severally, as follows:

   A.  Permanently enjoining defendants from further acts of intercepting, copying,

   using, disseminating, and otherwise possessing and controlling plaintiff's

   electronic, written, and confidential proprietary information; and

   B.  For such other relief as this Court deems just, equitable, and proper.

**COUNT XII**
**Triad v. Stone, Sample, and Tindle**
**SPECIFIC PERFORMANCE OF CONTRACT**

153.   Triad reincorporates and re-alleges paragraphs 1-152 of this Complaint as

though fully set forth herein.

154.   Triad's specific performance claim against defendants Stone, Sample, and

Tindle are proper under supplemental pendant jurisdiction because the

specific performance claim is substantially related and arises from a common

nucleus of operative facts stemming from the same controversy that resulted

in a violation of federal statute 18 U.S.C.S. §2511 in Count I, above.  *United*

*Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

155.   Missouri law governs the determination of defendant's acts.

156. Defendants Stone, Sample, and Tindle each entered into separate Trade Secret and Confidentiality Agreements with Triad.

157. Defendant Spector was in joint venture and agreement with Plaintiff and as a result thereof owes duties to Plaintiff for protection of Plaintiff's confidential information.

158. These respective agreements were all clear, explicit and definite in their terms.

159. These respective contracts were fair, reasonable, and conscionable given Triad's business affairs, concerns, and relationships.

160. These respective agreements were voluntarily read and signed by each defendant respectively as a condition of each defendant's employment or contract with Triad.

161. Triad furnished contract work and employment (respectively) to each defendant Stone, Sample, and Tindle in exchange for each defendant's voluntary assent to the Confidentiality Agreement's terms and conditions.

162. These respective contracts conferred upon Triad the exclusive right to possess, control, own, retain, and benefit of Triad's intellectual property, proprietary and confidential information through definite and express written terms and conditions.

163. Each defendant has breached their contracts (respectively) with Triad through their actions more particularly described in the foregoing paragraphs as incorporated into this claim.

164. These actions by the defendants were willful and malicious and showed complete indifference to and conscious disregard for Triad.

Case 4:10-cv-00165-SOW   Document 1   Filed 02/20/10   Page 37 of 39

165. Defendants' breaches have directly and proximately caused the following damages to Triad:

   a. Damages for hundreds of staff hours spent securing Triad's servers from unauthorized access;

   b. Damages for hundreds of staff hours spent contacting clients who have been solicited by Defendants Stone, Sample, Spector, and Tindle;

   c. Damages for hundreds of staff hours spent restoring and recreating damaged, removed, shut-down, stolen, and transfered domains;

   d. Damages due to hiring a computer firm to secure domains;

   e. Damage by virtue of lost profits through funds extracted from Triad's merchant accounts due to refunding disputed charges;

   f. Actual, consequential, and special damages in such amounts as is adequate to compensate Triad for their losses; and

   g. Such other relief as the Court deems just, equitable and proper.

166. Triad's legal remedies are inadequate to compensate or restore Triad back to the position it occupied prior to defendant's unlawful conduct in direct contravention of these respective contracts, and thus specific performance is necessary.

WHEREFORE, plaintiff prays the Court enter judgment for plaintiff and against defendants, jointly and severally, as follows:

   A. Order defendants to specifically perform each term and condition of their respective Trade Secret and Confidentiality Agreements with Triad; and

   B. For such other relief as this Court deems just, equitable, and proper.

<u>Demand for Jury Trial</u>

Plaintiff Demands a trial by jury on all issues so triable.



Respectfully Submitted,

KESSINGER LAW FIRM, P.C.

/s/ James A. Kessinger           .
James Kessinger, Missouri Bar No.42808
200 NW Englewood Road, Suite B
Kansas City, Missouri 64118
(816) 436-0707 [phone]
(816) 436-1380 [fax]
jak4law@kc.rr.com

ATTORNEYS FOR PLAINTIFF

39